IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZAKARIA AJLANE, | : |
| | : |
| Plaintiff | : |
| | : CIVIL NO. 1:CV-11-0544 |
| vs. | : |
| | : (Judge Caldwell) |
| JOHN KERESTES, | : |
| SUPERINTENDENT, *et al.*, | : |
| | : |
| Defendants | : |

*M E M O R A N D U M*

I.   *Introduction*

On March 23, 2011, Zakaria Ajlane, a state inmate formerly housed at SCI-Mahanoy, in Frackville, Pennsylvania, filed this action alleging defendants failed to protect him from assault by his mentally ill cellmate, and then denied him medical care for his injuries.  Named as defendants are the following SCI-Mahanoy prison officials: Superintendent Kerestes; Unit Manager John Muick; Mr. Boyce; Nurse Supervisor Alice Chipriano; Corrections Health Care Administrator (CHCA) Marva J. Cerulio; and John Steinhart, RNS.

On June 7, 2011, defendants filed a motion to dismiss the Complaint based on the Eleventh Amendment, Ajlane's failure to allege the personal involvement of many of the defendants, and his failure to state an Eighth Amendment claim.  Although Ajlane filed a brief in opposition to defendants' motion to dismiss, it is one paragraph long and does not address the defendants' motion.[1]  For the following reasons, Defendants' motion will be

---

[1] "Plaintiff opposes the Defendants' Motion to Dismiss in that Plaintiff forth facts sufficient to
(continued...)

granted.

II.     *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted). A court may consider documents that are attached to or submitted with the complaint, *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002), and matters of public record. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006).

"Pro se complaints are 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Jackson v. Div. of Developmental Disabilities*, 394 F. App'x 950, 951 n.3 (3d Cir. 2010)(nonprecedential)(quoted case omitted). Nonetheless, the complaint still "must contain allegations permitting 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoted case omitted). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). However, leave to amend need not be granted if amendment would be futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

---

[1](...continued)
premit (sic) a court to order trial of the issues. Plaintiff at the very least, has pleaded enough facts to justify placing the case on the trial docket." *See* Doc. 18.

With these principles in mind, we set forth the background to this litigation, as Plaintiff alleges it.

III.  *Background*

On February 22, 2009, Plaintiff was housed at SCI-Mahanoy and double-celled with inmate Robert House.  Doc. 1, Compl. at CM/ECF p. 2.[2]  At approximately 1:35 a.m. that day, inmate House attacked Plaintiff.  *Id.*  House pulled Ajlane out of his top bunk, stabbed him in the head, and assaulted him, all the time repeatedly yelling "you are trying to kill me, and my family."  *Id.*  Ajlane received staples for his head wound and suffered injuries to his back and neck.  *Id.* at CM/ECF p. 3.

According to Ajlane, approximately two weeks prior to the assault, his cellmate, Robert House, started experiencing "phsychologically (sic) problems."  *Id.* at CM/ECF p. 2.  House sent a request slip to Unit Manager Muick seeking a transfer to another facility because he feared his life was in danger from corrections officers at SCI-Mahanoy.  *Id.*  Unit Manager Muick responded that he would make an appointment for House with a Psychiatrist because he "feared inmate was having a mental breakdown."  *Id.*  Psychiatrist Boyce spoke with inmate House and prescribed him medication.  *Id.* at CM/ECF pp. 2-3.  "House never took the medication and his mental state became worse."  *Id.* at CM/ECF p. 3.

Inmate House then began writing grievances against block officers CO Smith, CO Hepner and CO John Doe.  *Id.*  He also started "making verbal threats to inmate's (sic)

---

[2] We refer to the page numbers assigned by the Case Management/Electronic Case Files (CM/ECF) system.

-3-

on the block". *Id.* At one point CO Smith asked Plaintiff what was going on with his cellmate. Ajlane responded that he thought House was "going crazy." *Id.* Psychiatrist Boyce was again contacted and spoke with House. Psychiatrist Boyce tried to persuade House to take the prescribed medication, noting that his "demeanor [had] changed since the first visit, and the guards were saying that he has snapped on several people, and it may be possible that he [was] hearing things." *Id.* House continued to refuse to take his medications and stated he still believed his life to be in danger. *Id.*

A week later, House assaulted Plaintiff Ajlane. *Id.* Ajlane attaches an affidavit from inmate House relating to these events. House affirms that he was "having problems with the guards" at the institution; that Unit Manager Muick made an appointment for him to see a Psychiatrist; that House refused to take medication prescribed to him by the psychiatrist; and that he told the Psychiatrist he was not going to take the medication. *Id.* at CM/ECF p. 12-14.

After returning from the medical unit following the February 22, 2009, assault, Ajlane learned that Unit Manager Muick and Psychiatrist Boyce "were aware that Inmate House refused to take his medication, and did nothing about it." *Id.* On March 4, 2009, Ajlan filed grievance number 264533 against Muick and Boyce alleging they were deliberately indifferent to his safety because they failed to remove House from his cell knowing he was experiencing mental health problems and refusing to take prescribed medication. *Id.* at CM/ECF p. 6. Major Thomas Derfler responded to the grievance noting that the incident was investigated by the prison's security office and that there was "no evidence or information indicating that [Ajlane] [was] having problems with House prior to" the incident and that Ajlane had in fact "requested House as a cellmate." *Id.* at CM/ECF p.

-4-

7.

Following the assault, after his initial visit to the medical unit, Ajlane wrote to Nurse Supervisor Alice Chipriano and Medical Director Marva Cervillo complaining of continued discomfort. *Id.* at CM/ECF p. 3. Both defendants told him "to return back to sick call." *Id.* Ajlane returned to sick call but "was not allowed to see a Doctor or receive any other form of medical help, other than more motrin." *Id.* Ajlane was charged $15.00 for the sick call visit and advised by a nurse that he would be charged the same "everytime [he] returned." *Id.* at CM/ECF p. 4. He later sent a request slip to Deputy Tritt stating that although he wrote to the medical department complaining of ongoing back pain from his injuries, he was dissatisfied with their response that he return to sick call. *Id.* at CM/ECF p. 18. He further complains the treatment he received was ineffective and that the medical department was charging for medical visits to deter him from returning. *Id.*

Dissatisfied with Deputy Tritt's response, Ajlane sent an inmate request slip to Superintendent Kerestes raising the same complaints, noting that at his last visit on March 25, 2009, he still had not received proper medical treatment and was again charged for the medical visit. *Id.* at CM/ECF p. 20. On June 9, 2009, Ajlane filed grievance 276824 alleging that he still suffers from the injuries of the assault, has not received proper medical care, and sought reimbursement for the charges incurred at the medical unit for seeking treatment for his injuries. *Id.* at CM/ECF p. 21.

In response to his grievance, Ajlane's inmate account was refunded the $15.00 he incurred for medical charges from his February 27, 2009 and March 27, 2009, sick call visits. *Id.* at CM/ECF p. 22.

Ajlane appealed the grievance response noting that he was still not receiving

-5-

medical treatment, other than motrin, for his injuries. *Id.* at CM/ECF p. 23. Ajlane appealed his medical grievance to final review which was referred to the Bureau of Health Care Services for response. *Id.* at CM/ECF pp. 26-27. The Bureau of Health Care Services held that the medical treatment provided to Ajlane at SCI-Mahanoy regarding his head, back and neck was reasonable and appropriate. *Id.* at CM/ECF p. 27. Medical costs previously assessed Ajlane were reimbursed to him and charged to his assailant. *Id.* "The Orthopedic consultant's report of September 30, 2009 documents that the right hand fracture is healed and there is no requirement for you to return for reevaluation." *Id.*

IV. *Discussion*

> A. *Ajlane May Not Maintain Claims for Damages Against Prison Officials in their Official Capacities.*

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst v. Halderman,* 465 U.S. 89, 99-100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)*; A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25-27, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). The Commonwealth of Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity. *See* 42 Pa. Cons. Stat. Ann. § 8521-22. However, claims for prospective injunctive relief to end an ongoing violation of federal law against state officials in their official capacities are not precluded by

the Eleventh Amendment.  *See Iles v de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011).  State officials sued in their *individual* capacities are "persons" within the meaning of Section 1983.  *See Hafer*, 502 U.S. at 31, 112 S.Ct. at 364-65.  Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities.  *Id.*

Ajlane states he is suing all named defendants for monetary damages and injunctive relief in both their individual and official capacities.  His claims for monetary damages against the defendants in their official capacities are subject to dismissal with prejudice.  This finding, however, does not preclude Ajlane's claim for prospective injunctive relief against the Defendants in their official capacities.  However, as Ajlane is no longer housed at SCI-Mahanoy, his claims for injunctive or declaratory relief against these defendants is moot.  *See Abdul-Akbar v. Watson*, 4 F.3d 195, 206-207 (3d Cir. 1993)(inmate's claim for injunctive and declaratory relief become moot upon his release from prison where alleged violations took place).  However, Ajlane's transfer or release from SCI-Mahanoy does not moot his claims for damages against the named Defendants in their personal capacities, nor are they barred by the Eleventh Amendment.

      B.    *Eighth Amendment Claim for Failure to Prevent Harm*

The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other inmates." *Hamilton v. Leavy*, 117 F.3d 742 (3d Cir. 1997).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer v. Brennan*, 511 U.S. 825, 834, 114

S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).  A plaintiff, however, must prove more than that he had a fight with another inmate.  *See Beard v. Lockhart*, 716 F.2d 544, 545 (8th Cir. 1983).

To establish a failure-to-protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison officials acted with "deliberate indifference" to his health and safety.  *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977.  Deliberate indifference is proven by showing that an official "knows of and disregards an excessive risk to inmate health or safety."  *Id.* at 837, 114 S.Ct. at 1979.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).  Negligence, or lack of due care under the circumstances, is insufficient to support a claim that Defendants failed to protect Plaintiff.  *Davidson v. Cannon*, 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).

Ajlane seeks to impose liability against Unit Manager Muick and Psychiatrist Boyce based on their failure to protect him from his cellmate who was prescribed medication by the psychiatrist but refused to take it.  Ajlane claims these Defendants should have separated him from House based on his increasing mental instability. However, as pled, Ajlane's present Complaint fails to assert an Eighth Amendment failure-to-protect claim against these or any other defendants.

Ajlane submits both his own version of events preceding the February 23, 2009, attack, and also that of his assailant, inmate House.  Neither Ajlane or House assert that they advised anyone, including Defendants, that House had a problem with Ajlane.

Both Plaintiff and House are consistent in saying that House feared for his life from the corrections staff, not Ajlane. Ajlane never asserts that he advised Defendants that he was having difficulties with House, or that House threatened him, or that he feared House or feared for his personal safety if double-celled with House.

Even as House became more disturbed and Ajlane knew House was refusing to take his prescribed medications, Ajlane never advised prison officials that he feared for his personal health and safety. Moreover, documents supplied by Ajlane in conjunction with his Complaint demonstrate that he wanted to be celled with House. Accordingly, there is no suggestion that any prison official knew or should have known from the facts averred that House posed any threat to Ajlane.

As Ajlane has failed to allege that any of the named prison officials knew House presented a substantial risk to his safety and that they deliberately disregarded that risk, Ajlane's failure-to-protect claim does not satisfy the Eighth Amendment and must be dismissed.

    C.    *Eighth Amendment Claim of Deliberate Indifference to a Serious Medical Need*

To establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden City. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known. *See Beers–Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). A prison official acts with deliberate

-9-

indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, absent a belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner, the non-medical defendants cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference. *Id.* Deliberate indifference, however, can be established by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed*.*" *Estelle*, 429 U.S. at 104-05, 97 S.Ct. at 291.

An inmate's mere disagreement with medical professionals "as to the proper medical treatment" of his medical complaint does not support an Eighth Amendment violation. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Likewise, a claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id*. at 107, 97 S.Ct. at 293. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).  In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference.  *See Spruill,* 372 F.3d at 235; *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Additionally, a section 1983 claim cannot be premised on a theory of *respondeat superior.*  In order to establish liability for deprivation of a constitutional right, a party must show the personal involvement of each defendant.  *Iqbal*, 556 U.S. __, 129 S.Ct. at 1948; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).  "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct."  *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71-72 (3d Cir. 2011).  This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207(3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)(noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations").  A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

In this case, it is apparent that Ajlane's claims of deliberate indifference to his

serious medical needs must be dismissed. For the purposes of this motion only, the Court will assume that Ajlane's injuries from the assault constitute a serious medical condition warranting Eighth Amendment protection. However, the Complaint itself demonstrates that the Defendants did not act with the requisite deliberate indifference to constitute an Eighth Amendment violation.

Ajlane asserts that following the February 22, 2009, incident he was seen by medical staff and received treatment for his injuries, treatment that included staples to his head and pain medication. Following this initial medical attention, he was seen again at sick call on February 24, 2009, and March 6, 2009, for complaints of ongoing back and neck pain. Ajlane reports being seen by a doctor, receiving Motrin, and being charged for the medical visits. At some point Ajlane was also seen by an orthopedic consultant for complaints about his right hand.[3] Therefore, contrary to Ajlane's allegations of deliberate indifference, the record establishes that Nurse Supervisor Chipriano and CHCA Cerullo did not ignore Plaintiff's request for medical care. They both instructed him to attend sick call.

Ajlane followed their advice, although he was displeased with the financial charges he incurred for the sick call visits and sought more advanced medical treatment than the medical professionals provided. However, neither Defendants nor prison medical staff ignored Ajlane's medical complaints, and his repeat sick call visits demonstrate his continued access to medical care, albeit not the treatment he sought.[4]  This disagreement

---

[3] We note that Ajlane does not aver in his Complaint that he suffered an injury to his hand as a result of the February 22, 2009, assault. Nonetheless, we note the orthopedic examination and consultation as further evidence that Ajlane's medical complaints were being taken seriously by medical staff.

[4] It is noted that Ajlane does not allege that due to his financially situation he was unable or
(continued...)

is insufficient to make out an Eighth Amendment cause of action.

Ajlane's claim of deliberate indifference on the part of Superintendent Kerestes also fails. Superintendent Kerestes is a prison administrator, not a medical care provider. In this case, Ajlane's medical needs, as related by Ajlane himself, were being addressed by health care professionals, just not to his satisfaction. There are no allegations to suggest that Superintendent Kerestes had reason to believe, or actually knew, that prison medical care professions were ignoring Ajlane's requests for medical assistance or were mistreating him. Therefore, Ajlane has failed to successfully plead an Eighth Amendment claim of deliberate indifference against Superintendent Kerestes.

The same is true for RNS Steinhart, who is not mentioned in the body of the Complaint, but whose name appears at the bottom of a grievance response which was resolved in Ajlane's favor, resulting in all sick call charges being reimbursed to him.

D.   *Leave to Amend*

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). In this instance, the Court believes that any amendment as to either the failure-to-protect claim or medical deliberate indifference claim would be futile. We make this finding based on the Complaint (and documents attached) and the fact that Ajlane did not attempt to controvert any of the

---

[4](...continued)
denied medical care. Thus, the sick call fees that were originally imposed on him, and later reimbursed to him, in themselves do not establish an Eighth Amendment claim for denial of medical care.

Defendants' legal arguments presented.  Accordingly, in the accompanying order, Defendants' motions to dismiss will be granted without leave to amend as to all of Ajlane's federal constitutional claims.

        We will issue an appropriate order.

                                      /s/ William W. Caldwell
                                      William W. Caldwell
                                      United States District Judge

Date: March 6, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZAKARIA AJLANE, : | |
| : | |
| Plaintiff : | |
| : | CIVIL NO. 1:CV-11-0544 |
| vs. : | |
| : | (Judge Caldwell) |
| JOHN KERESTES, : | |
| SUPERINTENDENT, *et al.*, : | |
| : | |
| Defendants : | |

*O R D E R*

AND NOW, this 6th day of March, 2012, in accordance with the accompanying memorandum, it is ordered that:

1. Defendants' motion to dismiss (doc. 14) is granted.

2. This action is hereby dismissed.

3. The Clerk of Court is directed to mark this matter closed.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge